**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

**MARIA J. SOTOMAYOR,**

          **Plaintiff,**

    **v.**                        **Civil Action No.:**_____

**LIBERTY MUTUAL GROUP INC. ,**
**a Massachusetts corporation,**

          **Defendant.**
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

    Plaintiff, MARIA J. SOTOMAYOR ("Plaintiff"), by and through her undersigned attorneys, sues Defendant, LIBERTY MUTUAL GROUP INC. ("Defendant"), and alleges as follows:

**FACTS COMMON TO ALL COUNTS**

    1.    This is a private civil rights action for damages which exceed the sum of seventy-five thousand and no/100 dollars ($75,000.00) by Plaintiff against Defendant for damages pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e *et seq.* ("Title VII") and the Florida Civil Rights Act of 1992, §760.01, *Florida Statutes*, *et seq.* ("FCRA") for discriminatory employment practices based upon national origin and for damages pursuant the  Americans with Disabilities Act, 42 U.S.C. § 1211("ADA") and for damages for Defendant's  interference with Plaintiff's lawful rights under The Family and Medical Leave Act, U.S. Code Chapter 28, Title I, et seq. ("FMLA").

    2.    At all times material hereto, Defendant operated a nationwide insurance company providing insurance products and services, including claims services, to the public.

3.      At all times material hereto, Defendant operated a claims office within Seminole County, Florida, staffed with business agents of Defendant known as "Customer Claims Representatives," providing services to customers of Defendant who had insurance-related claims and/or questions with respect to their insurance coverages with Defendant.

4.      At all times material hereto, Plaintiff was a resident of the state of Florida and an adult female of Hispanic national origin, bilingual in English and Spanish, and was employed by Defendant as a Customer Claims Representative at Defendant's Seminole County, Florida, office location.

5.      At all times material hereto, Defendant was a Massachusetts corporation for profit and was an "employer" within the meaning of the Title VII, the FCRA and the ADA and employed more than fifteen (15) employees.

6.      At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Title VII, the FCRA and the ADA.

7.      At all times material hereto, Plaintiff was a qualified individual for FMLA job-protected job leave, having been employed by Defendant for more than twelve (12) qualifying months for more than 1,250 hours, and suffered one or more serious medical conditions for which she was undergoing a regimen of continuous medical care.

8.      At all times material hereto, Defendant was a covered employee under the FMLA employing at least fifty (50) employees within seventy-five (75) miles of Plaintiff's work location with Defendant.

9.      At all times material hereto, Defendant classified Defendant's employees by language skills and subjected bilingual English-Spanish speaking employees of Hispanic national origin to less favorable terms and conditions of employment that those otherwise similarly

situated employees who were not bilingual English-Spanish speaking and not of Hispanic national origin.

10. After Plaintiff protested the discriminatory treatment she suffered from Defendant, Defendant engaged in retaliatory activities against Plaintiff and thereafter Defendant terminated Plaintiff's employment without cause.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the parties and the claims asserted herein because Defendant unlawfully discriminated against Plaintiff and Defendant wrongfully retaliated against Plaintiff by terminating Plaintiff's employment with Defendant, in violation of Title VII and the FCRA and violated Plaintiff's rights under the ADA and the FMLA and Plaintiff seeks damages of more than seventy-five thousand and no/100 dollars ($75,000.00).

12. Venue is proper in the Middle District of Florida because all facts material to and giving rise to the claims asserted by Plaintiff herein occurred in Seminole County, Florida.

## CONDITIONS PRECEDENT

13. Plaintiff filed an administrative charge of discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC") as a condition precedent to this action.

14. On or about August 7, 2020 the EEOC, issued Plaintiff the Notice of Right to Sue, a copy of which is attached hereto as Exhibit A.

15. All conditions precedent to the filing of this action have been met.

## THE PARTIES

16. At all times material hereto, Plaintiff was a bilingual English-Spanish speaking adult female of Hispanic national origin, born in Puerto Rico, to parents of Puerto Rican ancestry, and currently residing in Orlando, Orange County, Florida.

17.     At all times material hereto, Defendant was, and continues to be, a Massachusetts corporation for profit and was authorized to do and in fact did business within the state of Florida and employed Plaintiff at Defendant's insurance claims office located at 255 Primera Boulevard, Lake Mary, Seminole County, Florida 32746.

## FACTUAL ALLEGATIONS

18.     At all times material hereto, Defendant operated a nationwide insurance business throughout the United States, including Seminole County, Florida, and maintained an EEO policy regarding equal employment opportunity within Defendant's workplace.

19.      On or about April 12, 2012, Plaintiff was hired by Defendant as a Claim Intake/Customer Service Representative and subsequently promoted to Customer Claims Representative, whereby Plaintiff worked at Defendant's office in Lake Mary, Florida.

20.     At all times material hereto, a primary function of Defendant's personnel assigned to its office in Lake Mary, Florida, was to process and resolve high volume insurance claims matters filed by Defendant's customers in an efficient manner employing excellent interpersonal communication skills.

21.     At all times material hereto, many of the customer interactions referred to in paragraph 20 hereof required proficiency in both English and Spanish by the Customer Claims Representatives employed by Defendant.

22.     At all times material hereto, to improve the efficiency of handling claims, Defendant established a team of Hispanic bilingual English-Spanish speaking Customer Claims Representatives to process claims for Spanish speaking customers not conversant in English.

23.     At all times material hereto, Defendant assigned Plaintiff to its Hispanic Bilingual Team.

24.     At all times material hereto, Defendant paid the Hispanic Bilingual Team less than non-bilingual Customer Claims Representatives and provided the Hispanic Bilingual Team diminished job status by classifying said Bilingual Team as a lesser job classification than its higher paid non-Hispanic, non-bilingual Customer Claims Representatives.

25.     At all times material hereto, Defendant required a larger workload of its Hispanic Bilingual Team than Defendant required of non-Hispanic, non-bilingual Customer Claims Representatives, to wit: the Hispanic Bilingual Team was required to process nationwide claims of low, moderate and high complexity claims, and total loss claims for both Spanish and English speaking customers whereas the higher paid non-Hispanic, non-bilingual Customer Claims Representatives did not process such a magnitude or variety of claims.

26.     At all times material hereto, Defendant engaged in workplace segregation requiring the Hispanic Bilingual Team to have a distinct workspace which was  separate and apart from the non-Hispanic, non-bilingual Customer Claims Representatives.

27.     At all times material hereto, Plaintiff worked on a regular (full time) basis and performed her job for Defendant in a satisfactory manner although Plaintiff was required to do more work for less compensation than similarly situated Customer Claims Representatives who were not on the Hispanic Bilingual Team.

28.     At all times material hereto, during the course of her employment by Defendant, Plaintiff observed that Defendant's employment practices established terms and conditions that were less favorable to the Hispanic Bilingual Team than the terms and conditions of employment that Defendant provided to similarly situated non-Hispanic, non-bilingual Customer Claims Representatives who were not on the Hispanic Bilingual Team.

29.    At all times material hereto, Plaintiff participated in protected activity when Plaintiff complained to Defendant that Plaintiff, being a member of the Hispanic Bilingual Team, had less favorable terms and conditions of employment by Defendant in terms of compensation, benefits and workload, than similarly situated non-Hispanic, non-bilingual Customer Claims Representatives whom Defendant compensated at a higher rate and required less claims processing.

30.    At all times material hereto, Plaintiff engaged in protected activity when Plaintiff asked Defendant for reasonable ADA accommodation so that Plaintiff could continue to work productively from her home while suffering a disabling medical condition.

31.    Said requests for accommodation were requested by Plaintiff during a email communications to Defendant's agent, ADA Specialist Sean Lambert on April 8, 2019, April 9, 2019, April 10, 2019 and April 15, 2019.

32.    At all times material hereto, Defendant denied Plaintiff's request for a reasonable ADA accommodation to work from Plaintiff's home.

33.     At all times material hereto, Plaintiff was suffering a serious medical conditions causing Plaintiff to undergo a continuing regimen of medical care, which was then known to Defendant, yet Defendant denied Plaintiff's request for FMLA leave beginning on or about February 20, 2019, although Plaintiff  had provided Defendant with the required information upon which to review and grant Plaintiff's request for leave as required under the FMLA.  .

34.    At all times material hereto, Plaintiff participated in protected activity in opposing Defendant's said discriminatory employment practices by contacting the EEOC and subsequently filing an Inquiry with the EEOC on or about February 26, 2019, and on or about April 29, 2019, thereafter filed a Charge of Employment Discrimination, a copy of which is

attached hereto as Exhibit "B," alleging employment discrimination on the basis of national origin and disability.

35.    On or about January 13, 2020, counsel for Plaintiff sent a Notice of Representation to Defendant, a copy of which is attached hereto as Exhibit "C," and warned Defendant not to retaliate against Plaintiff for engaging in protected activity with the EEOC.

36.    At all times material hereto and following Plaintiff's filing a Charge of Discrimination, Defendant engaged in a pattern and practice of unlawful retaliation against Plaintiff in response to her protected activities, as described above, by targeting Plaintiff for termination of employment, to-wit: threatening to terminate Plaintiff's employment; establishing an excessive amount of claims for processing which impacted Plaintiff's performance metrics than had been established prior to Plaintiff's filing said EEOC Charge; intimidating Plaintiff by excessive and aggressive "coaching" sessions; having an HR representative join performance management "discussions;"  providing Plaintiff poor performance reviews; placing Plaintiff on disciplinary warning;  placing Plaintiff on "warning" and "probation;" and eventually terminating Plaintiff's employment by Defendant.

37.    On or about January 13, 2020, counsel for Plaintiff sent a second communication to Defendant, a copy of which is attached hereto as Exhibit "D," and again warned Defendant not to retaliate against Plaintiff for engaging in protected activity with the EEOC.

38.    At all times material hereto, Defendant had not engaged in any retaliatory actions against Plaintiff until after Plaintiff had engaged in protected activities with the EEOC.

39.    At all times material hereto , Defendant continued to engage in a pattern and practice of retaliatory discrimination directed to Plaintiff until unlawfully terminating Plaintiff's employment with Defendant on or about March 3, 2020.

40.     On or about May 15, 2020, Plaintiff amended her previously filed EEOC Charge to and filed the "Amended Charge of Discrimination," a copy of which is attached hereto as Exhibit "E," adding "retaliation" to the charging document.

41.     Plaintiff has retained the services of the undersigned attorneys and is obligated to pay them a reasonable fee in connection with the claims hereinafter set forth.

**COUNT I**
**Disparate Treatment in Employment under Title VII**

42.     Plaintiff re-alleges and incorporates paragraphs 1 through 41 as if fully set forth herein.

43.     42 U.S.C42 U.S.C. §2000e-2(a)(1) provides

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to *discriminate* against any individual with respect to his *compensation, terms, conditions, or privileges of employment,* because of such individual's race, color, religion, sex, or *national origin. (Emphasis added.)*

44.     Plaintiff is a member of a protected class under the statute referenced in paragraph 43 hereof, being Hispanic and of Puerto Rican ancestry.

45.     Defendant willfully discriminated against Plaintiff on the basis of Plaintiff's national origin by denying Plaintiff equal employment opportunity in Defendant's employment practices afforded to similarly situated non-Hispanic, non-bilingual Customer Claims Representatives by discriminating against Plaintiff in compensation, terms, conditions, or privileged of employment by requiring Plaintiff to do more work for less pay than similarly situated non-Hispanic, non-bilingual Customer Claims Representatives in violation of the statute and Defendant's own EEO policy.

46.     As a result of the foregoing, Plaintiff has suffered damages in excess of seventy-five thousand and no/100 dollars ($75,000.00).

WHEREFORE, as provided by the statute, Plaintiff demands that judgment be entered in Plaintiff's favor and against Defendant and that the Court enter an award for actual damages, including back pay, forward pay, punitive damages, and award reasonable attorneys' fees, prejudgment interest, and costs, or such other relief as the court deems appropriate.

## COUNT II
## Workplace Segregation under Title VII

47.   Plaintiff  re-alleges and incorporates paragraphs 1 through 41 as if fully set forth herein.

48.   42 U.S.C42 U.S.C. §2000e-2(a)(1) provides:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, *conditions,* or privileges of employment, because of such individual's race, color, religion, sex, or *national origin. (Emphasis added.)*

49.     Plaintiff is a member of a protected class under the statute referenced in paragraph 48 hereof, being Hispanic and of Puerto Rican ancestry.

50.     Defendant willfully discriminated against Plaintiff on the basis of Plaintiff's national origin in violation Defendant's own EEO policy and the statute by physically segregating Plaintiff and other members of the Hispanic Bilingual Team into separate work areas away from, and apart from, similarly situated higher compensated non-Hispanic, non-bilingual Customer Claims Representatives who Defendant required to do less work than the Hispanic Bilingual Team.

51.     Defendant's policy of workplace segregation created a two-tier workplace based upon national origin and stigmatized Plaintiff by violating the statute and Defendant's own EEO policy by willfully segregating Plaintiff from non-Hispanic, non-bilingual Customer Claims Representatives and by denying Plaintiff equal employment opportunity, compensation, promotional opportunity, interactions with other employees and self esteem

52.     As a result of the foregoing, Plaintiff has suffered damages in excess of seventy-five thousand and no/100 dollars ($75,000.00).

WHEREFORE, as provided by the statute, Plaintiff demands that judgment be entered in Plaintiff's favor and against Defendant and that the Court enter an award for actual damages, including back pay, forward pay, punitive damages, and award reasonable attorneys' fees, prejudgment interest, and costs, or such other relief as the court deems appropriate.

## COUNT III
## Unlawful Retaliation under Title VII

53.     Plaintiff re-alleges and incorporates paragraphs 1 through 41 as if fully set forth herein.

54.     42 U.S.C42 U.S.C. §2000e-2(a)(1) provides:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to *discharge* any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or *national origin. (Emphasis added.)*

55.     Plaintiff is a member of a protected class under the statute referenced in paragraph 54 hereof, being Hispanic and of Puerto Rican ancestry.

56.     Plaintiff engaged in statutorily protected activity under the statue by participating in protected activity by engaging in communications with Defendant that Plaintiff sought

compensation, terms, conditions, or privileges of employment on equal terms with non-Hispanic, non-bilingual Customer Claims Representatives.

57.     Plaintiff engaged in statutorily protected activity by opposing Defendant's said discriminatory employment practices by filing a Charge of Discrimination with the EEOC alleging workplace discrimination on the basis of national origin and Disability.

58.     Defendant possessed actual knowledge that Plaintiff had participated in statutorily protected activity by opposing Defendant's discriminatory workplace employment practiced under the statute as Plaintiff had filed a Charge of Discrimination with the EEOC.

59.     Defendant willfully, maliciously and unlawfully retaliated against Plaintiff by threatening to terminate Plaintiff's employment; establishing higher workload that impacted performance metrics than had been established prior to Plaintiff's filing said EEOC Charge; intimidating Plaintiff by aggressive "coaching" sessions; having an HR representative join performance management "discussion;" providing poor performance reviews; placing Plaintiff on disciplinary warning; placing Plaintiff on "warning" and "probation."

60.     Defendant willfully, willfully and unlawfully retaliated against Plaintiff by terminating Plaintiff's employment on or about April 3, 2020, because Plaintiff had engaged in statutorily protected activities opposing Defendant's discriminatory workplace policies.

61.     As a result of the foregoing, Plaintiff has suffered damages in excess of seventy-five thousand and no/100 dollars ($75,000.00).

WHEREFORE, as provided by the statute, Plaintiff demands that judgment be entered in Plaintiff's favor and against Defendant and that the Court enter an award for actual damages, including back pay, forward pay, punitive damages, and award reasonable attorneys' fees, prejudgment interest, and costs, or such other relief as the court deems appropriate.

## COUNT IV
## Disparate Treatment in Employment under the FCRA

62.     Plaintiff re-alleges and incorporates paragraphs 1 through 41 as if fully set forth herein.

63.     760.10(1)(a), Florida Statutes, provides:

> It is an unlawful employment practice for an employer to discharge or to fail or refuse to hire any individual, or *otherwise to discriminate against any individual* with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, *national origin*, age, handicap, or marital status. (*Emphasis added.*)

64.     Plaintiff is a member of a protected class under the statute referenced in paragraph 63 hereof, being Hispanic and of Puerto Rican ancestry.

65.     Defendant willfully discriminated against Plaintiff on the basis of national origin by denying Plaintiff equal employment opportunity in Defendant's employment practices afforded to similarly situated non-bilingual Customer Claims Representatives by discriminating against Plaintiff in compensation, terms, conditions, or privileges of employment by requiring Plaintiff to do more work for less pay than similarly situated non-Hispanic, non-bilingual Customer Claims Representatives violation of the statute and Defendant's own EEO policy.

66.     As a result of the foregoing, Plaintiff has suffered damages in excess of seventy-five thousand and no/100 dollars ($75,000.00).

WHEREFORE, as provided by the statute, Plaintiff demands that judgment be entered in Plaintiff's favor and against Defendant and that the Court enter an award for actual damages, including back pay, forward pay, punitive damages, and award reasonable attorneys' fees, prejudgment interest, and costs, or such other relief as the court deems appropriate.

## COUNT V
### Workplace Segregation under the FCRA

67.     Plaintiff  re-alleges and incorporates paragraphs 1 through 41 as if fully set forth herein.

68.     760.10(1)(a), Florida Statutes, provides:

> It is an unlawful employment practice for an employer to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, *conditions,* or privileges of employment, because of such individual's *race*, color, religion, sex, pregnancy, *national origin*, age, handicap, or marital status. (*Emphasis added*)

69.     Plaintiff is a member of a protected class under the statute referenced in paragraph 68 hereof, being Hispanic and of Puerto Rican ancestry.

70.     Defendant willfully discriminated against Plaintiff on the basis of national origin in violation Defendant's EEO policy and the statute by physically segregating Plaintiff and other members of the Hispanic Bilingual Team into separate work areas away from, and apart from, similarly situated higher compensated non-Hispanic, non-bilingual Customer Claims Representatives who Defendant required to do less work than the Hispanic Bilingual Team.

71.     Defendant's policy of workplace segregation created a two-tier workplace based upon national origin and stigmatized Plaintiff by violating the statute and Defendant's own EEO policy by willfully segregating Plaintiff from non-Hispanic, non-bilingual Customer Claims Representatives and by denying Plaintiff equal employment opportunity, compensation, promotional opportunity, interactions with other employees  and self esteem.

72.     As a result of the foregoing, Plaintiff has suffered damages in excess of seventy-five thousand and no/100 dollars ($75,000.00).

WHEREFORE, as provided by the statute, Plaintiff demands that judgment be entered in Plaintiff's favor and against Defendant and that the Court enter an award for actual damages, including back pay, forward pay, punitive damages, and award reasonable attorneys' fees, prejudgment interest, and costs, or such other relief as the court deems appropriate.

## COUNT VI
## Unlawful Retaliation under the FCRA

73.     Plaintiff re-alleges and incorporates paragraphs 1 through 41 as if fully set forth herein.

74.     760.10(1)(a), Florida Statutes, provides:

> It is an unlawful employment practice for an employer to *discharge* or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, *national origin*, age, handicap, or marital status. (*Emphasis added*).

75.     Plaintiff is a member of a protected class under the statute referenced in paragraph 74 hereof, being Hispanic and of Puerto Rican ancestry.

76.     Plaintiff engaged in statutorily protected activity under the statue by participating in protected activity by engaging in communications with Defendant that Plaintiff sought compensation, terms, conditions, or privileges of employment on equal terms with non-Hispanic, non-bilingual Customer Claims Representatives.

77.     Plaintiff engaged in statutorily protected activity by opposing Defendant's said discriminatory employment practices by filing a Charge of Discrimination with the EEOC alleging workplace discrimination on the basis of national origin and Disability.

78.     Defendant possessed actual knowledge that Plaintiff had participated in statutorily protected activity by opposing Defendant's discriminatory workplace employment practiced under the statute as Plaintiff had filed a Charge of Discrimination with the EEOC.

79.     Defendant willfully, maliciously and unlawfully retaliated against Plaintiff by threatening to terminate Plaintiff's employment; establishing higher performance metrics than had been established prior to Plaintiff's filing said EEOC Charge; intimidating Plaintiff by aggressive "coaching" sessions; having an HR representative join performance management "discussion;" providing poor performance reviews; placing Plaintiff on disciplinary warning; placing Plaintiff on "warning" and "probation."

80.     Defendant willfully, maliciously and unlawfully retaliated against Plaintiff by terminating Plaintiff's employment on or about April 3, 2020, because Plaintiff had engaged in statutorily protected activities opposing Defendant's discriminatory workplace policies.

81.     As a result of the foregoing, Plaintiff has suffered damages in excess of seventy-five thousand and no/100 dollars ($75,000.00).

WHEREFORE, as provided by the statute, Plaintiff demands that judgment be entered in Plaintiff's favor and against Defendant and that the Court enter an award for actual damages, including back pay, forward pay, punitive damages, and award reasonable attorneys' fees, prejudgment interest, and costs, or such other relief as the court deems appropriate.

## Count VII
## Failure to Accommodate under the ADA

82.     Plaintiff re-alleges and incorporates paragraphs 1 through 41 as if fully set forth herein.

83.     The Americans with Disabilities Act, 42 U.S.C. § 12112(a) provides:

It is an unlawful employment practice for an employer to discharge or fail or refuse to hire any individual, or otherwise *to discriminate* against a qualified individual on the basis of disability. (*Emphasis added*).

84.     At all times material hereto Plaintiff was an employee of Defendant and qualified for the protections of the ADA as Defendant was a covered employer subject to the requirements of the ADA having more than fifteen (15) employees.

85.     During the course of her employment with Defendant, Plaintiff suffered a disabling condition which interfered with Plaintiff's ability to perform the essential functions of Plaintiff's job as a Customer Claims Representative.

86.     At all times material hereto, Plaintiff communicated Plaintiff's request for reasonable workplace accommodation so that Plaintiff could perform her job from home doing so would assist Plaintiff to perform the essential functions of Plaintiff's job while having little or no detrimental impact upon Plaintiff's productivity as a Customer Claims Representative.

87.     At all times material hereto, Defendant denied Plaintiff's request for reasonable workplace accommodation to work from home due to Plaintiff's known disability.

88.     At all times material hereto, Defendant's denial of Plaintiff's request for reasonable workplace accommodation caused Plaintiff pain, suffering and mental anguish.

89.     As a result of the foregoing, Plaintiff has suffered damages in excess of seventy-five thousand and no/100 dollars ($75,000.00).

WHEREFORE, as provided by the statute, Plaintiff demands that judgment be entered in Plaintiff's favor and against Defendant and that the Court enter an award for actual damages, including back pay, forward pay, punitive damages, and award reasonable attorneys' fees, prejudgment interest, and costs, or such other relief as the court deems appropriate.

## Count VIII
## <u>Failure to Accommodate under the FCRA</u>

90.    Plaintiff  re-alleges and incorporates paragraphs 1 through 41 as if fully set forth herein.

91.    760.10(1)(a), Florida Statutes, provides:

> It is an unlawful employment practice for an employer to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, *handicap*, or marital status. (*Emphasis added*).

92.    During the course of her employment by Defendant, Plaintiff suffered a handicap (disabling condition) which interfered with her ability to perform the essential functions of Plaintiff's job as Customer Claims Representative.

93.    At all times material hereto, Plaintiff communicated to Defendant her request for a reasonable workplace accommodation so that Plaintiff could perform Plaintiffs' job from home doing so would assist Plaintiff  to perform the essential functions of Plaintiff's job while having little or no detrimental impact upon Plaintiff's productivity as a Customer Claims Representative.

94.    At all times material hereto, Defendant denied Plaintiff's request for reasonable workplace accommodation to work from home due to Plaintiff's known handicap.

95.    At all times material hereto, Defendant's denial of Plaintiff's request for reasonable workplace accommodation caused Plaintiff pain, suffering and mental anguish.

96.    As a result of the foregoing, Plaintiff has suffered damages in excess of seventy-five thousand and no/100 dollars ($75,000.00).

WHEREFORE, as provided by the statute, Plaintiff demands that judgment be entered in Plaintiff's favor and against Defendant and that the Court enter an award for actual damages, including back pay, forward pay, punitive damages, and award reasonable attorneys' fees, prejudgment interest, and costs, or such other relief as the court deems appropriate.

## COUNT IX
## Unlawful FMLA Interference

97.     Plaintiff re-alleges and incorporates paragraphs 1 through 41 as if fully set forth herein.

98.     Family and Medical Leave Act, U.S. Code Chapter 28, Title I, Section 105 provides:

> Exercise of Rights.—It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this statute.

99.     At all times material hereto, Plaintiff a qualified employee under the statute, and Defendant was covered employer under the statute, Plaintiff was suffering serious medical conditions and  undergoing a regimen of continuing medical care that was known to Defendant.

100.    At all times material hereto, Plaintiff placed Defendant on notice of Plaintiff's need for job protected leave under the FMLA.

101.    At all times material hereto, Defendant denied Plaintiff's FMLA rights to job protected leave under the FMLA.

102.    The actions of Defendant as detailed above are in violation of the FMLA as Defendant interfered with Plaintiff's lawful FMLA rights.

103.    As a result of the foregoing, Plaintiff has suffered damages in excess of seventy-five thousand and no/100 dollars ($75,000.00).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court declare Defendant to be in violation of Plaintiff's rights as protected by the FCRA; award Plaintiff back pay and the value of lost employment benefits; award Plaintiff front pay or reinstatement; award Plaintiff damages for mental anguish, emotional distress, and loss of reputation; award Plaintiff punitive damages,  award Plaintiff her attorneys' fees and costs; and grant other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands trial by jury of all triable issues raised herein.

/s/Richard S. Larson _____
RICHARD S. LARSON, ESQ.
Florida Bar No.: 096261
Rick Larson Law
310 South Dillard Street, Suite 100
Winter Garden, FL 34787
Telephone: (407) 877-7115
Facsimile: (404 877-6970
rickslarsonlaw@gmail.com
Co-counsel for Plaintiff

/s/ Ronald W. Sikes _____
RONALD W. SIKES, ESQ.
Florida Bar No.: 231428
Sikes Law Group, PLLC
310 South Dillard Street, Suite 120
Winter Garden, FL 34787
Primary Email: rsikes@sikeslawgroup.com
              abent@sikeslawgroup.com
              rhassett@sikeslawgroup.com
Secondary: mrosales@sikeslawgroup.com
Telephone:    (407) 877-7115
Facsimile No.: (407) 877-6970
Co-counsel for Plaintiff

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

EXHIBIT B

# NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Maria J. Sotomayor<br>5615 Estabrook Wood Dr. #308<br>Orlando, FL 32746 | From: | Tampa Field Office<br>501 East Polk Street<br>Room 1000<br>Tampa, FL 33602 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 511-2019-01542 | Christopher S. Griffin,<br>Investigator | (813) 202-7936 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Evangeline Hawthorne*                              August 7, 2020

Enclosures(s)                    **Evangeline Hawthorne,**              *(Date Mailed)*
                                         **Director**

cc:   **Kimberly Houston Drummond**              **Rick Larson**
      **Corporate Counsel**                      **RICK LAWSON LAW**
      **Liberty Mutual Group Inc**               **310 South Dillard St., Ste. 100**
      **7900 Windrose Avenue**                   **Winter Garden, FL 34787**
      **Plano, TX 75024**

Enclosure with EEOC

# EXHIBIT "A"

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 511-2019-01542 |

| Florida Commission On Human Relations | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| **Maria J Sotomayor** | **(407) 694-0371** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **5845 Bent Pine Dr. #114, ORLANDO, FL 32822** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **LIBERTY MUTUAL GROUP** | | **(617) 357-9500** |

| Street Address | City, State and ZIP Code |
|---|---|
| **255 Primera Blvd., LAKE MARY, FL 32746** | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☒ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **04-01-2012** | **04-01-2019** |

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**PERSONAL HARM:**
I began my employment with the above Respondent since April 30, 2012 as a Customer Claims Rep. Throughout my employment, I complained about wage discrimination. I am not the only one on the bilingual team that have suffered this abuse. EEOC may interview many previous bilingual/hispanic employees that will agree on the race discrimination to our Department. Including one Supervisor that resigned. (At least 6 or more employees). Bilingual/Hispanic Adjusters are the only Adjusters working ALL lines of business in the Liberty Mutual Insurance Group. 'Non-Bilingual Adjusters' -some do speak Spanish but due to Language Differential they transfer the claims to the 'Bilingual' Unit. There were talks that they will or are currently getting the language differential that we get as well. *Express Adjusters are considered Grade 8. They only* handle clear liability/low complexity claims - clear liability is Single vehicle accidents, tow claims, rear-end collision or hit while parked. They only work specific regions of US. *Core Adjusters are Grade 9. They only* handle Unclear Liability Claims. Intersection/Parking Lot/Sideswipe accidents. Vandalism claims but they DO NOT handle Total Loss claims. Regional only. *Total Loss Adjusters only* handle Total Loss claims (Grade 10) Regional only. *Claims Resolution Specialists (Grade 10 & 11) High Complexity claims that might have coverage/excess issues & Total Loss Thefts/Fires. I am a Bilingual. Senior Customer Claims Resolution Representative (II) According to document sent to EEOC I should only be handling clear liability claims (Express) That changed and they ramped up

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Maria Sotomayor on 04-29-2019 02:13 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EXHIBIT "B"

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 511-2019-01542 |

| Florida Commission On Human Relations | and EEOC |
|---|---|
| *State or local Agency, if any* | |

the Grade 9 to also handle Core Unclear Liability claims. The difference is that I get paid Grade 9, but my duties include the following: A) Full Files (Claimants - Insured - Property Damage) B) Low/Express - Moderate/Core unclear liability claims - High Complexity claims were injuries are reported and Attorneys are involved. (We handle the Property Damage/vehicle part of the claim but it requires communications with Attorneys) C) Total Loss claims (all files) D) Claims at a Nationwide level not at a Regional level like other Adjusters. E) Now there is a Co-Brand with Safeco Insurance, therefore we are also handling those claims. More added responsibilities. F) When another Adjuster from the non-bilingual unit notices that there is a Spanish Speaking claimant or insured on the claim, the instructions are to reassign it to the Bilingual team regardless if the other parties involved on the claim speak English (full files/English-Spanish / ALL lines of work - Express/Core/Low/Moderate/High Complexity and Total Loss). You must keep in mind that other non Spanish speaking Adjusters only work one line of work and only in one region. When a Bilingual Adjuster is hired, the job description in the job posting indicates that they will do 'Low Complexity/Clear Liability claims. Grade 9 level. But within the same job posting it talks about a 'ramp-up' period. Unfortunately for the new Bilingual Adjusters they were already put on Notice that they will also do Total Loss. (Grade 10) so the trend continues even with the new hires. Some have already voiced their opinion that they feel 'overwhelmed' and with 'stuff dumped on them'. When we get reassigned claims they might be very old with issues to be solved. Sometimes the non-bilingual Adjusters dump the claims to our team without completing basic steps before transferring. Out of the 20 original claims Adjusters we are only 6 of the original doing the whole US Full Files. The new Adjusters will get paid less of course than the rest of us with more tenure. It is completely logical that we are obviously being discriminated against if we are doing Total Loss High Complexity claims. At one point we were also doing the job that a Claims Resolution Specialist does (Grade 10 & 11). (Complex coverage/Total Loss Theft/Fire claims/Excess issues) Email sent to Senior Management Mary Folsom back in 2017 was included on EEOC initial packet where I voiced my opinion and asked for Grade 10 consideration according to duties assigned but I have always been ignored in regards to that aspect. On September 7, 2018 I filled out a survey voicing my opinion as well. Nothing was done. Finally on October 24 I was completely burnt out and as of today I am still sick and encountering the same issues at work. Retaliation:*** *Constant reminder of metrics and how to apply new strategies to make the numbers. At one point after returning I had the most Total Loss claims from the whole team 41. After you sent LOR they assigned 3 to 4 Adjusters from other departments to lower my total loss claims. *My supervisor advised me yesterday in the meeting that if I do not meet the metrics he will place me in a PIP (warning) I recorded whole 1 hour conversation. * I have been asked twice by my Manager if the EEOC charge is being done only by me or also by other Adjusters from the Bilingual Team. Claims Manager Mary Folsom is inquiring. * I keep being asked 'how I feel with the job' * I advised my Manager Machado yesterday that since I have an Attorney I do not want to be asked 'how I am feeling with my job situation because I am being represented by an Attorney. *Yesterday I asked my supervisor how many of us Bilingual Adjusters are left not counting the new ones. He said 6, you are the oldest one (full time employee with highest tenure). Even though Camir and Yancey have bern there longer than me, they are part-time. One other employee Maria Rodriguez has been with the company for 13 years but has bern in claims for less years than me. *Today they had a 'Bilingual Townhall' they stated we were going to have a activity. The plan was that one employee was to answer 'What is going good for you?' And, What is getting in the way of your job?. The strategy was that one employee tgat answered would have to chose another employee randomly to answer. From my group ( they divided groups in 3) one of the employees of course chose me to answer the question. I replied 'I don't know, I already spoke with my Manager yesterdat. It's all good' just to avoid having to answer. The room had Skype Conferencing with recorder. *It is obvious and well-known by the employees that had to resign due to unbearable work conditions that the company saves thousands of dollars by hiring new employees (all of them are younger than most of the original bilingual team members) Not only do they get paid less, the company would save thousands more in salaries, benefits, pensions, health care (the older the most likely health conditions will deteriorate) it is a mere pressure strategy. We are not been equally treated due to not getting a 'managable workload and claims influx threshold compared to others. All the Management and employees know this. My job when hired was to work in Customer Service Claims meaning only to take First Notices of Loss and assign to Adjusters. I started Grade 9. Now I have dozens of duties more and even though I have gotten raises I have

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| **Digitally signed by Maria Sotomayor on 04-29-2019 02:13 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 511-2019-01542 |

| Florida Commission On Human Relations | and EEOC |
|---|---|
| *State or local Agency, if any* | |

remained Grade 9 for 7 years as of 4/30/2019. Disability: On 1/18 I was denied disability without finishing proper treatments (mental and physical health) among the conditions was the Cervical Fibroid. On January 30th I was hospitalized with heavy bleeding. Was recently hospitaluzed again and had to get blood transfussion and now suffer anemia. Due to financial burdens of not getting paid for one month due to short term disability denial I had to postpone Ultrasound until today. Conveniently, Liberty Mutual set-up the mandatory in-person meeting today at the same time of my appointment. On various occassions I asked for accomodations from Liberty Mutual ADA but I have been ignored twice. Accomodation requested was to work from home until severe bleeding/surgery occurred to stop anemia due to dizziness, palpitations, shortness of breath. One time I vomited after heavy palpitations.

RESPONDENT'S REASON (S) FOR ADVERSE ACTION(S):
I was given no legitimate reason(s) for any of the other actions listed.

DISCRIMINATION STATEMENT:
I believe I have been discriminated against based on my national origin (Hispanic) in violation of Title VII of the Civil Rights Act of 1964, as amended and disability in violation of the Americans with Disability Act, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Maria Sotomayor on 04-29-2019 02:13 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:**  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   **FORM NUMBER/TITLE/DATE.**  EEOC Form 5, Charge of Discrimination (11/09).

2.   **AUTHORITY.**  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   **PRINCIPAL PURPOSES.**  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   **ROUTINE USES.**  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**RICHARD S. LARSON**

Attorney at Law

310 South Dillard St., Suite 100 Winter Garden, FL 34787

Phone (407) 877-7115 • Fax (407) 877-6970

RickLarsonLaw.com • RickLarsonLaw@gmail.com

April 2, 2019

Department of Human Resources
Liberty Mutual Insurance
75 Berkeley Street
Boston, MA

*Via email communications: Hrsupport@libertymutual.com*

Re: Maria J. Sotomayor
    Sr. Claims Resolution Representative
    Employee Number: 0220905

Dear Human Resources Representative,

## NOTICE OF REPRESENTATION

Please be advised that this office represents the above-referenced individual, Maria J. Sotomayor, with respect to allegations regarding workplace discrimination, including wage discrimination, on the basis of national origin, race and age, among other factors. Ms. Sotomayor engaged in lawfully protected conduct by reaching out to the U.S. Equal Opportunity Commission or about 02/26/2019 for assistance with respect to her allegations and seeking investigation of same.

As such, Ms. Sotomayor, and similarly situated employees, are protected by law from coercion, duress or retaliation regarding this matter.

Govern yourselves accordingly.

Thank you.

Richard S. Larson
Attorney at Law

Cc: Maria Sotomayor

EXHIBIT "C"

**RICHARD S. LARSON**

Attorney at Law

310 South Dillard St., Suite 100 Winter Garden, FL 34787

Phone (407) 877-7115 • Fax (407) 877-6970

RickLarsonLaw.com • RickLarsonLaw@gmail.com

January 13, 2020

Department of Human Resources
Liberty Mutual Insurance
175 Berkeley St.
Boston, MA 02116
*Via email communications: Hrsupport@libertymutual.com*

Re: Maria J. Sotomayor
    Sr. Claims Resolution Representative
    Employee Number: 0220905

Dear Human Resources Representative,

## NOTICE OF RETALIATION

As you are aware, your employee, Maria J. Sotomayor, has an active case with the U.S. Equal Opportunity Commission against Liberty Mutual Insurance with respect to allegations regarding unlawful workplace discrimination, including wage discrimination, on the basis of national origin, race and age, among other factors.

In opposing such workplace activities, and participating in the ongoing EEOC investigation, Ms. Sotomayor has exercised her lawfully protected rights and, as such, Ms. Sotomayor, and similarly situated employees, are protected by law from coercion, duress or retaliation regarding this matter. Ms. Sotomayor has a history as a high performing employee and is of the belief that recent activities by the company to address alleged performance issues are pretextual in nature and simply a means to terminate her employment.

Govern yourselves accordingly.

Thank you

Richard S. Larson
Attorney at Law

Cc: Maria Sotomayor

EXHIBIT "D"

*Letter to Liberty Mutual*

```
=================================================
                  WINDERMERE
          9300 CONROY WINDERMERE RD
          WINDERMERE, FL 34786-9998
                119615-0595
                (800)275-8777
             01/16/2020 08:14 AM
=================================================
```

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| Mail Pickup | 1 | | $0.00 |

(Label #:70180680000139850512)
(Label #:95909402531291549800058)

| | | | |
|---|---|---|---|
| First-Class Mail® | 1 | $0.55 | $0.55 |
| Letter | | | |

   (Domestic)
   (BOSTON, MA  02116)
   (Weight:0 Lb 0.40 Oz)
   (Estimated Delivery Date)
   (Tuesday 01/21/2020)

| | | | |
|---|---|---|---|
| Certified | | | $3.50 |

   (USPS Certified Mail #)
   (70192280000050587341)

| | | | |
|---|---|---|---|
| Total: | | | $4.05 |

| | |
|---|---|
| Debit Card Remit'd | $4.05 |

   (Card Name:MasterCard)
   (Account #:XXXXXXXXXXXX6312)
   (Approval #)
   (Transaction #:886)
   (Receipt #:026934)
   (Debit Card Purchase:$4.05)
   (Cash Back:$0.00)
   (AID:A0000000042203        Chip)
   (AL:DEBIT)
   (PIN:Verified)

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit www.usps.com
USPS Tracking or call 1-800-222-1811.

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

Preview your Mail
Track your Packages
Sign up for FREE @
www.informeddelivery.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

HELP US SERVE YOU BETTER

TELL US ABOUT YOUR RECENT
POSTAL EXPERIENCE

Go to:
https://postalexperience.com/Pos

840-5327-0154-001-00044-07461-01

or scan this code with
your mobile device:

or call 1-800-410-7420.

YOUR OPINION COUNTS

Receipt #: 840-53270154-1-4407461-1
Clerk: 09

# U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
**Domestic Mail Only**

For delivery information, visit our website at *www.usps.com*®.

BOSTON, MA 02116

OFFICIAL USE

| Certified Mail Fee | $3.50 | 0595 |
| | $ | |

Extra Services & Fees (check box, add fee as appropriate)
- ☐ Return Receipt (hardcopy)         $ $0.00
- ☐ Return Receipt (electronic)       $ $0.00
- ☐ Certified Mail Restricted Delivery $ $0.00
- ☐ Adult Signature Required          $ $0.00
- ☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$0.55
$

JAN 16 2020

01/16/2020

Total Postage and Fees
$4.05
$

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

USPS

EEOC Form 5 (11/09)

# AMENDED CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 511-2019-01542 |

**Florida Commission On Human Relations** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Maria J. Sotomayor | (407) 694-0371 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 5845 Bent Pine Dr. #114, Orlando, FL 32822 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| LIBERTY MUTUAL GROUP | 500+ | (617) 357-9500 |

| Street Address | City, State and ZIP Code |
|---|---|
| 255 Primera Blvd., Lake Mary, FL 32746 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN

☒ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 04-01-2012 | 04-03-2020 |

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

PERSONAL HARM:

I began my employment with the above Respondent since April 30, 2012 as a Customer Claims Rep. Throughout my employment, I complained about wage discrimination. I am not the only one on the bilingual team that have suffered this abuse. EEOC may interview many previous bilingual/Hispanic employees that will agree on the race discrimination to our Department. Including one Supervisor that resigned. (At least 6 or more employees). Bilingual/Hispanic Adjusters are the only Adjusters working ALL lines of business in the Liberty Mutual Insurance Group. 'Non-Bilingual Adjusters' - some do speak Spanish but due to Language Differential they transfer the claims to the 'Bilingual' Unit. There are talks that they will or are currently getting the language differential that we get as well. *Express Adjusters are considered Grade 8. They only* handle clear liability/low complexity claims - clear liability is Single vehicle accidents, tow claims, rear-end collision or hit while parked. They only work specific regions of US. *Core Adjusters are Grade 9. They only* handle Unclear Liability Claims. Intersection/Parking Lot/Sideswipe accidents. Vandalism claims but they DO NOT handle Total Loss claims. Regional only. *Total Loss Adjusters only* handle Total Loss claims (Grade 10) Regional only. *Claims Resolution Specialists (Grade 10 & 11) High Complexity claims that might have coverage/excess issues & Total Loss Thefts/Fires. I am a Bilingual. Senior Customer Claims Resolution Representative (II) According to document sent to EEOC I should only be handling clear liability claims (Express) That changed and they ramped up the Grade 9 to also handle Core Unclear Liability claims. The difference is that I get paid Grade 9, but my duties include the following: A) Full Files (Claimants - Insured - Property Damage) B) Low/Express - Moderate/Core unclear liability claims - High Complexity claims were injuries are reported and Attorneys are involved. (We handle the Property

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 5/15/2020 Date      *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EXHIBIT "E"

# AMENDED CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA | |
| | ☒ EEOC | **511-2019-01542** |

**Florida Commission On Human Relations** and EEOC

*State or local Agency, if any*

Damage/vehicle part of the claim but it requires communications with Attorneys) C) Total Loss claims (all files) D) Claims at a Nationwide level not at a Regional level like other Adjusters. E) Now there is a Co-Brand with Safeco Insurance, therefore we are also handling those claims. More added responsibilities. F) When another Adjuster from the non-bilingual unit notices that there is a Spanish Speaking claimant or insured on the claim, the instructions are to reassign it to the Bilingual team regardless if the other parties involved on the claim speak English (full files/English-Spanish / ALL lines of work - Express/Core/Low/Moderate/High Complexity and Total Loss). You must keep in mind that other non Spanish speaking Adjusters only work one line of work and only in one region. When a Bilingual Adjuster is hired, the job description in the job posting indicates that they will do 'Low Complexity/Clear Liability claims. Grade 9 level. But within the same job posting it talks about a 'ramp-up' period. Unfortunately for the new Bilingual Adjusters they were already put on Notice that they will also do Total Loss. (Grade 10) so the trend continues even with the new hires. Some have already voiced their opinion that they feel 'overwhelmed' and with 'stuff dumped on them'. When we get reassigned claims they might be very old with issues to be solved. Sometimes the non-bilingual Adjusters dump the claims to our team without completing basic steps before transferring. Out of the 20 original claims Adjusters we are only 6 of the original doing the whole US Full Files. The new Adjusters will get paid less of course than the rest of us with more tenure. It is completely logical that we are obviously being discriminated against if we are doing Total Loss High Complexity claims. At one point we were also doing the job that a Claims Resolution Specialist does (Grade 10 & 11). (Complex coverage/Total Loss Theft/Fire claims/Excess issues) Email sent to Senior Management Mary Folsom back in 2017 was included on EEOC initial packet where I voiced my opinion and asked for Grade 10 consideration according to duties assigned but I have always been ignored in regards to that aspect. On September 7, 2018 I filled out a survey voicing my opinion as well. Nothing was done.

Finally on October 24 I was completely burnt out and as of today I am still sick and encountering the same issues at work. Retaliation:*** *Constant reminder of metrics and how to apply new strategies to make the numbers. At one point after returning I had the most Total Loss claims from the whole team 41. After you sent LOR they assigned 3 to 4 Adjusters from other departments to lower my total loss claims. *My supervisor advised me yesterday in the meeting that if I do not meet the metrics he will place me in a PIP (warning) I recorded whole 1 hour conversation. * I have been asked twice by my Manager if the EEOC charge is being done only by me or also by other Adjusters from the Bilingual Team. Claims Manager Mary Folsom is inquiring. * I keep being asked 'how I feel with the job' * I advised my Manager Machado yesterday that since I have an Attorney I do not want to be asked 'how I am feeling with my job situation because I am being represented by an Attorney. *Yesterday I asked my supervisor how many of us Bilingual Adjusters are left not counting the new ones. He said 6, you are the oldest one (full time employee with highest tenure). Even though Camir and Yancey have been there longer than me, they are part-time. One other employee Maria Rodriguez has been with the company for 13 years but has been in claims for less years than me. *Today they had a 'Bilingual Townhall' they stated we were going to have an activity. The plan was that one employee was to answer 'What is going good for you?' And, What is getting in the way of your job?. The strategy was that one employee answered would have to chose another employee randomly to answer. From my group ( they divided groups in 3) one of the employees of course chose me to answer the question. I replied 'I don't know, I already spoke with my Manager yesterday. It's all good' just to avoid having to answer.

The room had Skype Conferencing with recorder. *It is obvious and well-known by the employees that had to resign due to unbearable work conditions that the company saves thousands of dollars by hiring new employees (all of them are younger than most of the original bilingual team members) Not only do they get paid less, the company would save thousands more in salaries, benefits, pensions, health care (the older the most likely health conditions will deteriorate) it

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 5/15/2020 _____<br>Date        *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

## AMENDED CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA | |
| | ☒ EEOC | **511-2019-01542** |

**Florida Commission On Human Relations** and EEOC

*State or local Agency, if any*

is a mere pressure strategy. We are not been equally treated due to not getting a 'manageable workload and claims influx threshold compared to others. All the Management and employees know this. My job when hired was to work in Customer Service Claims meaning only to take First Notices of Loss and assign to Adjusters. I started Grade 9. Now I have dozens of duties more and even though I have gotten raises I have remained Grade 9 for 7 years as of 4/30/2019. Disability: On 1/18 I was denied disability without finishing proper treatments (mental and physical health) among the conditions was the Cervical Fibroid. On January 30th I was hospitalized with heavy bleeding. Was recently hospitalized again and had to get blood transfusion and now suffer anemia. Due to financial burdens of not getting paid for one month due to short term disability denial I had to postpone Ultrasound until today. Conveniently, Liberty Mutual set-up the mandatory in-person meeting today at the same time of my appointment. On various occasions I asked for accommodations from Liberty Mutual ADA but I have been ignored twice. Accommodation requested was to work from home until severe bleeding/surgery occurred to stop anemia due to dizziness, palpitations, shortness of breath. One time I vomited after heavy palpitations.

On 4 different occasions, I have been threatened about being put in a 30-day performance plan/warning/human resources (2 times by my Ex-Supervisor Alexander Machado 8/27 and 9/16). The latest two times by my new supervisor Sindy Bustillo 11/27 and 12/04. They implemented weekly 1:1's with me (before it was monthly, but they are applying more pressure) They are claiming performance issues, but never pick any of the good claims/reviews. Before they complained about my metrics and desktop management which I improved, so now they are finding any reason/error/delay on my claims to justify performance for warning. In a lot of cases we get reassignments that already passed deadlines, so we have no real control of the metrics and Liberty Mutual does not exclude them, so you are penalized anyways even of things you have no control of. Not meeting metrics affects the yearly bonus. On the metrics that I definitely have 100% control of, 2 are met for the year and 1 is only 2% shy of being met.

On October 10, 2019, some of us in the bilingual team had a meeting with the new Office Claims Manager. One of the new bilingual employees voiced her opinion about the work caseload/overload difference from other English Language Adjusters, a team member from the English Language team agreed with us that the bilingual team has more work than others. The new employee Stephanie Del Otero was then advised by her supervisor Alexander Machado that she did not have to voice her opinion, needless to say she later resigned.

On November 27, 2019, my new Supervisor met with me and was full of duress only reviewing the negative. So their technique is to pick any claims where I have made errors, or that are delayed, only review me on those, and make me accept that I failed by asking what is your takeaway on this? so that you can say 'not to do it again', therefore they can justify dismissal. They are claiming performance issues, but never pick any of the good surveys/claims for review. I felt as if I was a horrible employee, contrary to my previous 7 years of excellent/good yearly reviews. She is extremely good at putting me down, being ironic and applying pressure. On this meeting she stated that Human Resources is involved and I was also advised that I no longer have the benefit of working from home twice a day as other employees, they say is a benefit only if metrics are met. Sindy Bustillo one on one meeting, once again advised of possible probation/termination.

During December 4, 2019, Manager Sindy Bustillo one on one meeting, once again advised of possible probation/termination.

During December 5th, 2019, I was finally trying to get to a healthy inventory/desktop stage by having 104 Core/Express

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 5/15/2020 Date     *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

## AMENDED CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | **511-2019-01542** |

**Florida Commission On Human Relations** and EEOC

*State or local Agency, if any*

claims. On that same day I was advised to have a meeting with my Manager Sindy Bustillo and the new Unit Manager Paul Colandreo and was advised of possible termination. As soon as I stepped out of the office I overheard Mr. Colandreo say, 'I think is best to do it sooner'. I feel that despite all my efforts to move forward, keep my job, and maintain a healthy claims inventory and work hard on improving my metrics, they already had set-up a plan to have a reason for termination due to the current EEOC Charge. Needless to say, claims could be reassigned by any Manager to any Adjuster. A Manager can strategically set-up an employee for failure. Some metrics are affected due to Agent error, but Liberty Mutual does not exclude metrics from reassignments as they claim.

During December 27, 2019, my Manager Sindy Bustillo gave me a Job Performance Written Warning which I refused to sign.

By January 23, 2020, I had met the expectations that Management had advised me to do to avoid termination which was desktop management (only 2 pages daily), 55 Express and Core claims which was up to par with other Adjusters and metrics improvement.

On three occasions during my Flexible Time Off, Management did not provide support for my 1st calls or payments pending as it is accustomed. There are team 'buddies that assist when the other is absent, That of course also affected my metrics. In one of the instances Manager Sindy Bustillo did not oversee and properly handle my other team members, they did not issue 6 of my payments even though 'Direction To Pay' was clear and documented which was extremely detrimental for my payment metric right before termination.

On February 28, I received a negative performance yearly review for 2019. My Manager Sindy Bustillo was with our Unit Manager Paul Colandreo. I was informed of Rating 5, no merit Increase and was advised of threat of termination. (Liberty Mutual had already received the Retaliation letter from my Attorney).

On March 4, 2020, I was given a document of 30-day probation (Written Warning) which I refused to sign. On March 31st, I had considerably improved my metrics which was the purpose of my now One Year probation to avoid termination and constant retaliation acts on behalf of Management. I understand Liberty Mutual might have strategically given me some reassigned claims** that were detrimental to my metrics to continue with their termination efforts against me. (Even though there is no perfect Adjuster with 100% metrics met to full capacity). Those reassignments also increased my chances to give them a reason to terminate my job. For example* On one claim reassignment my metric was affected by 57 days, when advising my Manager that this is just another example of how reassignments have been affecting my metrics, she stated that I had no option but to keep the claim and take the detrimental metric. She would write an 'observation'. Those type of reassignments happened throughout the years. Ironically, she terminated me on April 3rd, 2020 via Skype call, with Mr. Paul Colandreo - Unit Manager present.

RESPONDENT'S REASON (S) FOR ADVERSE ACTION(S):
I was given no legitimate reason(s) for any of the other actions listed.

DISCRIMINATION STATEMENT:
I believe I have been discriminated against based on my national origin (Hispanic) and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended and disability in violation of the Americans with Disability Act, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 5/15/2020     _(signature)_ <br> Date     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |